(Surrogate's Court, Rensselaer County. March, 1906.)

WILLS—TESTAMENTARY CAPACITY—EVIDENCE.

    In proceedings for the probate of a will, evidence *held* sufficient to show testamentary capacity of testatrix.

In the matter of the probate of the last will of Cornelia E. Winne. Decree admitting to probate.

Calvin S. McChesney, for proponent.

L. Hotaling, special guardian, for contestant.

HEATON, S. The only question to be decided is whether or not Miss Winne was of sufficient mental capacity, on the 11th day of February, 1904, to make the will now offered for probate. It is not contended that she suffered from any acute mental derangement, but it is claimed that, by reason of two attacks of hemiplegia, commonly called paralysis, her mind had been so far destroyed that she was incapable of comprehending the nature and extent of her property and the claims of her near relatives upon her bounty. Her near relatives were her sister, Mrs. Cadby, and her niece, Miss Audna Winne. Her estate was of the value of about $5,100, all of which she gives to her sister, except a legacy of $250 to her niece. The deceased lived in her own home and her niece Audna and the latter's widowed mother and others lived with her. She paid Audna in cash and in other ways for waiting upon her, but whether to the full extent of the value of such services does not appear. The will itself is not unnatural, and does not upon its face indicate a failure to appreciate the claims of her near relatives upon her bounty.

It is conceded that, prior to the first attack of paraylsis in 1902, the deceased "was of sound, competent mind, that she was strong and in a good physical condition, and that she was of the age of 61 years." Upon that date she suffered a severe shock of paralysis, and about one year from that time she had a second attack. An exceedingly sharp contest was made over the effect of these attacks upon the body and mind of the deceased, and a large number of witnesses were sworn by contestant and proponent. The testimony given by the contestant's

witnesses proves that at certain times the deceased showed unmistakable evidence of failing mental powers. Some of the incidents described indicate as to those matters and at those particular times, a complete loss of mental control, and as to other matters confusion of mind and loss of memory. The proponent's witnesses relate incidents occurring during the same period of time which indicate that the deceased was in a normal mental condition at the times mentioned. This opposing evidence is not contradictory, since it describes her state of mind upon different occasions and under various conditions and surroundings. If we concede that there were times when the deceased was mentally incompetent, then we must have proof that the character of that incapacity, and the nature of the disease which caused it, made it impossible that she could at other times regain her mental power and be competent, as testified to by the proponent's witnesses. The whole evidence must prove that this character of incompetency was permanent when once established. That is not the evidence nor the fact.

It is well established by medical experience that loss of mind brought on by hemorrhage of the brain is not often complete, where the patient survives the attack, and is invariably transitory and recurrent thereafter. We must, then, conclude that this character of evidence establishes only a condition in which a person may be incompetent one day or one week and competent the next day or the next week. Therefore we must ascertain the actual condition of the deceased on the day the will was executed. The subscribing witnesses are men of high standing and character and had known the deceased for many years. For some months before the will was drawn they had been engaged in making up some real estate accounts between the deceased and Mrs. Cadby, who owned two parcels of real estate in common, one of which was the home occupied by the deceased. Apparently both wanted a settlement and adjustment of their joint matters, and both consulted Mr. Tolhurst, a mutual friend, and he suggested the employment of Mr. Betts, saying that he had for many years been engaged in settling estates and adjusting accounts, and they both agreed to his employment as their joint attorney. On the 11th day of February, 1904, the deceased, Mrs. Cadby, and Mr. Tolhurst met in the office of Mr. Betts by appointment, and an adjustment of their accounts and a division of their real estate was agreed upon and shortly thereafter consummated in accordance with such agreement. Included in these transactions was the taking of a mortgage by the deceased for the balance due her and for an additional amount of money loaned by her that day to Mrs. Cadby. After this business was done, the deceased asked Mr. Betts to figure up just how much money she had in bank, and, on being told, she remarked that she was afraid she wouldn't have enough so the interest would keep her; that she didn't want to use the principal. She then asked Mr. Betts to draw a will for her, and gave him the directions for so doing. Mr. Tolhurst noticed that she did not give anything to the niece, Audna, the contestant, and spoke about it. Miss Winne replied that they had had enough, but, after considering the matter, directed that $250 be inserted in the will for Audna. Both Mr. Betts and Mr. Tolhurst give the events and transactions of that afternoon, when the will was executed, as a part of several business transactions entered into with

evident intelligence by the deceased, with such detail that no other conclusion can be formed than that the deceased was at the time of sound and disposing mind. Any other finding must treat the whole testimony of these reputable witnesses as deliberate falsehoods, cunningly manufactured to sustain the will.

Whatever might have been Miss Winne's mental condition at various times before the day of making the will, the evidence of the transactions of that day, including the making of this will, is conclusive that she had, on that occasion, sufficient mental capacity to comprehend the nature and extent of her property and the claims of her near relatives upon her bounty. Let findings be prepared accordingly.

Decreed accordingly.